UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| MICHAEL SCOT FLECK, | : | CASE NO. 21-54965-LRC |
| | : | |
| Debtor. | : | |
| _____ | :_____ | |
| | : | |
| S. GREGORY HAYS, Chapter 7 Trustee | : | |
| for the Estate of Michael Scot Fleck, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | ADV. PRO. NO. 21-5150-LRC |
| | : | |
| JPMORGAN CHASE BANK, N.A. and | : | |
| FIGURE LENDING LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**AMENDED[1] COMPLAINT**

COMES NOW S. Gregory Hays, as Chapter 7 Trustee (the "**Plaintiff**" or "**Trustee**") for the bankruptcy estate of Michael Scot Fleck (the "**Bankruptcy Estate**"), by and through undersigned counsel, and files this *Amended Complaint* against JPMorgan Chase Bank, N.A. ("**Chase**") and Figure Lending LLC ("**Figure Lending**" and with Chase, the "**Defendants**"), respectfully showing the Court as follows:

**Jurisdiction and Venue**

1.     This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334.

---

[1]     Trustee files this Amended Complaint in accordance with F.R.C.P. 15(a)(1)(B).  Fed. R. Civ. P. 15; Fed. R. Bankr. P. 7015.

2.    This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2).

3.    This adversary proceeding is initiated under Rule 7001 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 547, 550, and 551.

4.    Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409(a) because this adversary proceeding arises in and relates to the Chapter 7 bankruptcy case of Michael Scot Fleck ("**Debtor**"), Case No. 21-54965-LRC (the "**Bankruptcy Case**" or "**Case**") pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

5.    Trustee consents to the entry of final orders or judgment by the Bankruptcy Court pursuant to Bankruptcy Rule 7008 of the Federal Rules of Bankruptcy Procedure.

6.    The Defendants are subject to the jurisdiction of this Court.

**Statement of Facts**

*A. General Background*

7.    Debtor initiated the underlying Bankruptcy Case by filing a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") on July 1, 2021 (the "**Petition Date**").

8.    Trustee was thereafter appointed and remains the duly acting Chapter 7 trustee in this Case.

9.    Under the circumstances of this Case, Trustee has completed reasonable due diligence regarding the claims raised in this Adversary Proceeding and has taken into account the Defendants' known or reasonably knowable defenses.

*B. Debtor's Purchase of the Property*

10.    By virtue of a *Warranty Deed* (the "**Warranty Deed**") dated October 29, 2009, Debtor was granted sole ownership in a certain real property and improvements with a common

address of 819 Durant PL, NE, #8, Atlanta, Georgia (the "**Property**").

11.     The Warranty Deed was recorded in the real property records of the Clerk of the Superior Court of Fulton County, Georgia (the "**Real Estate Records**") on November 5, 2009.

12.     Upon information and belief, also in October of 2009, Debtor executed a security deed (the "**Original Security Deed**") conveying an interest in the Property to secure a loan that Debtor used to purchase the Property.

13.     The Original Security Deed was cancelled in the Real Estate Records on August 22, 2018.

*C. The Subject Security Deeds*

*1. The First Security Deed*

14.     On or about July 25, 2018, Debtor executed a *Security Deed* (the "**Chase Security Deed**") in favor of Chase, conveying an interest in the Property to secure a debt (the "**Chase Debt**") in the original principal amount of $113,695.00 (the "**First Transfer**").

15.     The Chase Security Deed was recorded in the Real Estate Records on August 10, 2018 beginning at Page 436 of Deed Book 59112.

16.     A true and correct copy of the Chase Security Deed, along with any riders, is attached hereto and incorporated herein by reference as Exhibit "A."

17.     The Chase Security Deed is attested by two unofficial witnesses: Karen Z. Shea and Barbara A. Skiba.

18.     On the next page of the Chase Security Deed appears an *Acknowledgment Certificate* (the "**Chase Acknowledgment**")

19.     The Chase Acknowledgment was signed by Judith Testone Beliveau, who was a notary public from the State of Connecticut.

20. Upon information and belief, Debtor did not execute the Chase Security Deed in the State of Georgia.

21. The execution of the Chase Security Deed by Debtor was not attested by an official witness as required by O.C.G.A. §§ 44-14-61 and 44-14-62 (2015). This defect in attestation is apparent on the face of the Chase Security Deed.

22. There is a document titled Closing Attorney's Affidavit that accompanies the Chase Security Deed in the Real Estate Records (the "**Purported Chase Affidavit**").

23. The Purported Chase Affidavit is not signed by Karen Z. Shea, Barbara A. Skiba, or Judith Testone Beliveau.

24. Instead, the Purported Chase Affidavit is allegedly signed by Kathryn M. Cigelske.

25. At the time that Kathryn M. Cigelske signed the Purported Chase Affidavit, she was a lawyer with offices in the State of Georgia.

26. The Purported Chase Affidavit does not include a jurat.

27. There is only one signature on the Purported Chase Affidavit.

28. There is a document titled *Waiver of Borrower's Rights* that accompanies the Chase Security Deed in the Real Estate Records (the "**Chase Waiver**").

29. Debtor's execution of the Chase Waiver was not attested by an official witness.

30. The Chase Security Deed was not in recordable form, and, even though recorded, it did not provide constructive notice to a bona fide purchaser.

31. As a result, a bona fide purchaser could acquire an interest in the Property that was superior to the interest of Chase in the Property even after the Chase Security Deed was recorded.

*2. The Second Security Deed*

32.     On or about March 10, 2020, Debtor executed a *Georgia Deed to Secure Debt* (the "**Figure Security Deed**") in favor of Figure Lending, conveying an interest in the Property to secure a debt (the "**Figure Debt**") in the original principal amount of $82,437.00 (the "**Second Transfer**").

33.     The Figure Security Deed was recorded in the Real Estate Records on March 16, 2020 beginning at Page 422 of Deed Book 61316.

34.     A true and correct copy of the Figure Security Deed, along with any riders, is attached hereto and incorporated herein by reference as Exhibit "B."

35.     The execution of the Figure Security Deed by Debtor was not attested by an official witness as required by O.C.G.A. § 44-14-61 (2015).  This defect in attestation is apparent on the face of the Figure Security Deed.

36.     Instead, the Figure Security Deed includes an acknowledgment (the "**Figure Acknowledgment**") that is certified by Michael Cook, who was a State of Nevada notary public.

37.     The Figure Acknowledgment states that on March 10, 2020, Debtor appeared before Michael Cook "by means of an interactive two-way audio and video communication."

38.     Upon information and belief, Debtor did not physically appear in person before Michael Cook on March 10, 2020.

39.     Upon information and belief, Michael Cook was not physically present in the room in which Debtor signed the Figure Lending Security Deed on March 10, 2020.

40.     Upon information and belief, Debtor and Michael Cook were not in the same State on March 10, 2020 when Debtor signed the Figure Lending Security Deed.

41.    There is no affidavit in the Real Estate Records that accompanies the Figure Lending Security Deed.

42.    The Figure Security Deed was not in recordable form, and, even though recorded, it did not provide constructive notice to a bona fide purchaser.

43.    As a result, a bona fide purchaser could acquire an interest in the Property that was superior to the interest of Figure Lending in the Property even after the Figure Security Deed was recorded.

### D. Debtor's Pre-Petition Sale of the Property

44.    On or about May 5, 2021, Debtor executed a *Limited Warranty Deed* (the "**Limited Warranty Deed**"), transferring the Property to Shun Kwan Phoebe (the "**Sale**") for a purchase price of $194,000.00 (the "**Sale Proceeds**").

45.    The Sale Proceeds were an interest in property of Debtor.

46.    On May 5, 2021, Debtor caused $110,599.00 of the Sale Proceeds to be transferred to Chase to pay the Chase Debt in full (the "**Chase Payment**").

47.    Also on May 5, 2021, Debtor caused $83,659.45 of the Sale Proceeds to be transferred to Figure Lending to pay the Figure Debt in full (the "**Figure Payment**").

48.    The Limited Warranty Deed was recorded in the Real Estate Records on May 19, 2021.

### E. Debtor's Financial Condition

49.    On his bankruptcy disclosure forms, Debtor scheduled total unsecured claims of $196,445.00. [Doc. No. 1 at page 39 of 52].

50.    Debtor scheduled total assets with a value of $1,735.00. *Id.*

51.    Upon information and belief, Debtor's financial condition did not materially

change from the date of the Sale of the Property on May 5, 2021 to the Petition Date.

52.    Upon information and belief, on the date of the Sale of the Property on May 5, 2021, the value of Debtor's assets was less than the value of his liabilities.

53.    There are currently $189,627.97 of unsecured claims filed in the Bankruptcy Case against the Bankruptcy Estate.

**COUNT I**

**Claim to Avoid the First Transfer
Under 11 U.S.C. § 547**

54.    Trustee realleges the allegations of paragraphs 1 through 53 above as though fully set forth herein.

55.    Debtor's execution and delivery of the Limited Warranty Deed, which occurred on May 5, 2021 and within 90 days of the Petition Date, may have resulted in the First Transfer being perfected on May 5, 2021.

56.    Alternatively, the recordation of the Limited Warranty Deed, which occurred on May 19, 2021 and within 90 days of the Petition Date, may have resulted in the First Transfer being perfected on May 19, 2021.

57.    Alternatively, the First Transfer was never perfected before the Petition Date.

58.    The First Transfer was made to or for the benefit of Chase.

59.    The First Transfer was made on account of an antecedent debt, the Chase Debt, owed by Debtor to Chase before the First Transfer was made.

60.    The First Transfer was made while Debtor was insolvent.

61.    The First Transfer was made within 90 days of the Petition Date.

62.    The First Transfer enabled Chase to receive more than Chase would have received if: (i) the Bankruptcy Case was a case under Chapter 7 of the Bankruptcy Code, (ii) the First

Transfer had not been made, and (iii) Chase received payment of the Chase Debt to the extent provided by the provisions of the Bankruptcy Code.

63.      Trustee may avoid the First Transfer under 11 U.S.C. § 547.

## COUNT II

### Claim for Preservation of Avoided First Transfer
### Under 11 U.S.C. § 551

64.      Plaintiff realleges the allegations of paragraphs 1 through 63 above as though fully set forth herein.

65.      The avoided First Transfer is preserved automatically for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551.

## COUNT III

### Claim to Avoid the Second Transfer
### Under 11 U.S.C. § 547

66.      Trustee realleges the allegations of paragraphs 1 through 53 above as though fully set forth herein.

67.      Debtor's execution and delivery of the Limited Warranty Deed, which occurred on May 5, 2021 and within 90 days of the Petition Date, may have resulted in the Second Transfer being perfected on May 5, 2021.

68.      Alternatively, the recordation of the Limited Warranty Deed, which occurred on May 19, 2021 and within 90 days of the Petition Date, may have resulted in the Second Transfer being perfected on May 19, 2021.

69.      Alternatively, the Second Transfer was never perfected before the Petition Date.

70.      The Second Transfer was made to or for the benefit of Figure Lending.

71.      The Second Transfer was made on account of an antecedent debt, the Figure Debt,

17809621v1

owed by Debtor to Figure Lending before the Second Transfer was made.

72.     The Second Transfer was made while Debtor was insolvent.

73.     The Second Transfer was made within 90 days of the Petition Date.

74.     The Second Transfer enabled Figure Lending to receive more than Figure Lending would have received if: (i) the Bankruptcy Case was a case under Chapter 7 of the Bankruptcy Code, (ii) the Second Transfer had not been made, and (iii) Figure Lending received payment of the Figure Debt to the extent provided by the provisions of the Bankruptcy Code.

75.     Trustee may avoid the Second Transfer under 11 U.S.C. § 547.

## COUNT IV

### Claim for Preservation of Avoided Second Transfer
### Under 11 U.S.C. § 551

76.     Plaintiff realleges the allegations of paragraphs 1 through 53 and paragraphs 66 through 75 above as though fully set forth herein.

77.     The avoided Second Transfer is preserved automatically for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551.

## COUNT V

### Claim to Avoid the Chase Payment
### Under 11 U.S.C. § 547

78.     Trustee realleges the allegations of paragraphs 1 through 65 above as though fully set forth herein.

79.     The Chase Payment was a transfer of Debtor's interest in property.

80.     The Chase Payment was made to or for the benefit of Chase.

81.     The Chase Payment was made on account of an antecedent debt, the Chase Debt, owed by Debtor to Chase before the Chase Payment was made.

82.    The Chase Payment was made while Debtor was insolvent.

83.    The Chase Payment was made within 90 days of the Petition Date.

84.    The Chase Payment enabled Chase to receive more than Chase would have received if: (i) the Bankruptcy Case was a case under Chapter 7 of the Bankruptcy Code, (ii) the Chase Payment had not been made, and (iii) Chase received payment of the Chase Debt to the extent provided by the provisions of the Bankruptcy Code.

85.    Trustee may avoid the Chase Payment under 11 U.S.C. § 547.

### COUNT VI

### Claim for Recovery from Chase
### Under 11 U.S.C. § 550(a)

86.    Plaintiff realleges the allegations of paragraphs 1 through 65 and paragraphs 78 through 85 above as though fully set forth herein.

87.    Chase is the initial transferee of the Chase Payment, or Chase is the entity for whose benefit the Chase Payment was made.

88.    Trustee is entitled to recover from Chase the value of the Chase Payment in the amount of $110,599.00 under 11 U.S.C. § 550.

### COUNT VII

### Claim for Preservation of Avoided Chase Payment
### Under 11 U.S.C. § 551

89.    Plaintiff realleges the allegations of paragraphs 1 through 65 and paragraphs 78 through 88 above as though fully set forth herein.

90.    The avoided Chase Payment is preserved automatically for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551.

**COUNT VIII**

**Claim to Avoid the Figure Payment
Under 11 U.S.C. § 547**

91.     Trustee realleges the allegations of paragraphs 1 through 53 and paragraphs 66 through 77 above as though fully set forth herein.

92.     The Figure Payment was a transfer of Debtor's interest in property.

93.     The Figure Payment was made to or for the benefit of Figure Lending.

94.     The Figure Payment was made on account of an antecedent debt, the Figure Debt, owed by Debtor to Figure Lending before the Figure Payment was made.

95.     The Figure Payment was made while Debtor was insolvent.

96.     The Figure Payment was made within 90 days of the Petition Date.

97.     The Figure Payment enabled Figure Lending to receive more than Figure Lending would have received if: (i) the Bankruptcy Case was a case under Chapter 7 of the Bankruptcy Code, (ii) the Figure Payment had not been made, and (iii) Figure Lending received payment of the Figure Debt to the extent provided by the provisions of the Bankruptcy Code.

98.     Trustee may avoid the Figure Payment under 11 U.S.C. § 547.

**COUNT IX**

**Claim for Recovery from Figure Lending
Under 11 U.S.C. § 550(a)**

99.     Plaintiff realleges the allegations of 1 through 53, paragraphs 66 through 77, and paragraphs 91 through 98 above as though fully set forth herein.

100.     Figure Lending is the initial transferee of the Figure Payment, or Figure Lending is the entity for whose benefit the Figure Payment was made.

101.     Trustee is entitled to recover from Figure Lending the value of the Figure

Payment in the amount of $83,659.45 under 11 U.S.C. § 550.

## COUNT X

### Claim for Preservation of Avoided Figure Payment
### Under 11 U.S.C. § 551

102.    Plaintiff realleges the allegations of paragraphs 1 through 53, paragraphs 66 through 77, and paragraphs 91 through 101 above as though fully set forth herein.

103.    The avoided Figure Payment is preserved automatically for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551.

### Reservation of Rights

104.    Trustee reserves the right to amend this Complaint to add additional parties, to add additional transfers, and to assert additional claims, including but not limited to any and all claims arising under Title 11 of the United States Code or applicable law.

WHEREFORE, Trustee prays that this Court enter a judgment in favor of Trustee:

a)    Avoiding the First Transfer under 11 U.S.C. § 547;

b)    Preserving the First Transfer for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551;

c)    Avoiding the Second Transfer under 11 U.S.C. § 547;

d)    Preserving the Second Transfer for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551;

e)    Avoiding the Chase Payment under 11 U.S.C. § 547;

f)    Granting Trustee a money judgment against Chase in the amount of $110,599.00 under 11 U.S.C. §550;

g)    Preserving the avoided Chase Payment for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551;

17809621v1

h)       Avoiding the Figure Payment under 11 U.S.C. § 547;

i)       Granting Trustee a money judgment against Figure Lending in the amount of

$83,659.45 under 11 U.S.C. §550;

j)       Preserving the avoided Figure Payment for the benefit of the Bankruptcy Estate

under 11 U.S.C. § 551; and

k)       Granting such other and further relief that the Court deems just and proper.

Respectfully submitted this 21st day of February, 2022.

ARNALL GOLDEN GREGORY, LLP
*Attorneys for Trustee*

By:*/s/   Michael J. Bargar*
        Michael J. Bargar
        Georgia Bar No. 645709
        michael.bargar@agg.com

171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363
P: (404) 873-7030
F: (40) 873-7031

17809621v1

**EXHIBIT "A" FOLLOWS**

17511370v1

Kathryn M. Cigelske, P.C.
d/b/a Real Title Solutions
Suite 150
1801 Peachtree St., NE
Atlanta, GA 30309

*180347*

Deed Book 59112 Pg 436
Filed and Recorded Aug-10-2018 05:00pm
2018-0224698
Georgia Intangible Tax Paid $342.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

**Return To:** JPMorgan Chase Bank, N.A.
Chase Records Center Attn: Collateral
Trailing Documents, RE:MC 8000
700 Kansas Lane
Monroe, LA 71203

**Prepared By:** Tarcanecia T Hubbard
1111 Polaris Parkway
Columbus, OH 43240-2050

## Security Deed

**Definitions.** Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) *"Security Instrument"* means this document, which is dated July 25, 2018, together with all Riders to this document.

(B) *"Borrower"* is Michael S. Flock . Borrower is the grantor under this Security Instrument.

(C) *"Lender"* is JPMorgan Chase Bank, N.A.. Lender is a National Banking Association organized and existing under the laws of the United States of America. Lender's address is 1111 Polaris Parkway, Columbus, OH 43240-2050. Lender is the grantee under this Security Instrument.

(D) *"Note"* means the promissory note signed by Borrower and dated July 25, 2018. The Note states that Borrower owes Lender one hundred thirteen thousand six hundred ninety-five and 00/100 Dollars (U.S. $ 113,695.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than August 1, 2048.

(E) *"Property"* means the property that is described below under the heading "Transfer of Rights in the Property."

(F) *"Loan"* means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) *"Riders"* means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

☐ Adjustable Rate Rider      ☒ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                   ☐ Biweekly Payment Rider       ☒ Other(s) [specify]

Waiver of Borrower's Rights and Closing Attorney's Affidavit and
Foreclosure Closing Disclosure

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services                    2018072316.1.4.4217-J20171016Y           Initials _____   Page 1 of 13

**(H)** *"Applicable Law"* means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I)** *"Community Association Dues, Fees, and Assessments"* means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J)** *"Electronic Funds Transfer"* means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K)** *"Escrow Items"* means those items that are described in Section 3.

**(L)** *"Miscellaneous Proceeds"* means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M)** *"Mortgage Insurance"* means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N)** *"Periodic Payment"* means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O)** *"RESPA"* means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, RESPA refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P)** *"Successor in Interest of Borrower"* means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**Transfer of Rights in the Property.** This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County [Type of Recording Jurisdiction] of FULTON [Name of Recording Jurisdiction]: See Attached Exhibit A

Parcel ID Number: 14 -0048-0002-107-6 which currently has the address of 819 DURANT PL NE APT, 8 [Street] ATLANTA [City], Georgia 30308 [Zip Code] ("Property Address"):

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**Uniform Covenants.** Borrower and Lender covenant and agree as follows:

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

2018072318.1.4.4217-J20171018Y

1163341888
Form 3011 1/01
1217
Page 2 of 13

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

1168241986
Form 3011 1/01
12/17
Page 3 of 13

2018072318.1.4.4217-J20171018Y



for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP6
Wolters Kluwer Financial Services

2016072316.1.4.4217-J20171018Y
Form 3011 1/01
12/17
Page 4 of 13

Initials: _____



Deed Book 59112 Pg 439

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under

GEORGIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

2018072318.1.4.4217-J20171016Y

Form 3011 1/01
1/17
Page 5 of 13

Initials 

Deed Book 59112 Pg 440

all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.



GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services    3018072016.1.4.4217-J20171018Y    Initials: _____    1196241568
Form 3011 1/01
12/17
Page 6 of 13

Deed Book 59112 Pg 441

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(A)** Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

**(B)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be

GEORGIA—Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

2018072316.1.4.4217-J20171018Y

1189041588
Form 3011 1/01
1/3/17
Page 7 of 13



Deed Book 59112 Pg 442

undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

GEORGIA--Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services
2018072318.1.4.4217-J20171018Y

Form 3011 1/01
13/17
Page 9 of 13



Deed Book 59112 Pg 443

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Service

2018072318.1.4.4217-J20171016Y

1102004155
Form 3011 1/01
13/17
Page 9 of 13

Deed Book 59112 Pg 444

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                1150241555
VMP®                                                                                              Form 3011 1/01
Wolters Kluwer Financial Services          2018072316.1.4.4217-J20171024Y          Initials: _____   Page 10 of 18



Deed Book 59112 Pg 445

the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

1190241668
Form 3011 1/01
12/17
Page 11 of 13

2018072316.1.4.4217-J20171016Y        Initials: ____



Deed Book 59112 Pg 446

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

**Borrower**

_Michael S. Fleck_   7/25/18
Michael S Fleck                           Date
                                          Seal

Signed, sealed and delivered in the presence of:

x _Karen Z-Shea_   7-25-18          x _Barbara A. Skiba_
Unofficial Witness            Date         Print: BARBARA A. SKIBA   Date
Print: Karen Z-Shea

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3011 1/01
VMP®                                                                                         13/17
Wolters Kluwer Financial Services        2018072318.1.4.4217-J20171018Y          Initials: ___   Page 12 of 13



Deed Book 59112 Pg 447

Notary Public
State of Georgia
My commission expires:

Loan Origination Organization: JPMorgan Chase Bank, N.A.
NMLS ID: 399798
Loan Originator: Jonathan O Obuseh
NMLS ID: 18650

---

This certificate is attached to a __13__ page document dated __7/25/18__ entitled __Security Deed__

## ACKNOWLEDGMENT CERTIFICATE

State of __Connecticut__
County of __New Haven__

Before me, __Judith Testone Beliveau__, on this

day personally appeared __Michael S. Fleck__

to be the person(s) whose name(s) is/are subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __25th__ day of __July__, __2018__.

__Judith Testone Beliveau__
Notary Public's Signature
My Commission Exp. 01/31/2023

Judith Testone Beliveau
Notary Public-Connecticut
My Commission Expires
January 31, 2023
(Seal)

**Signer's Identity verified by:**
☐ Personally known to me
☐ Identity proven on the oath
☒ Identity proven on the basis of __DRVL LIC__

Copyright ©2011 American Association of Notaries, Inc.  PO Box 630601 Houston, TX 77263  1-800-721-2663  www.usnotaries.com

# Condominium Rider

THIS CONDOMINIUM RIDER is made this 25th day of July, 2018, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the *"Security Instrument"*) of the same date given by the undersigned (the *"Borrower"*) to secure Borrower's Note to JPMorgan Chase Bank, N.A. (the *"Lender"*) of the same date and covering the Property described in the Security Instrument and located at:

819 DURANT PL NE APT, 8, ATLANTA, GA 30308
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a Condominium Project known as:

Palisades By The Park
[Name of Condominium Project]

(the *"Condominium Project"*). If the owners association or other entity which acts for the Condominium Project (the *"Owners Association"*) holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**Condominium Covenants.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The *"Constituent Documents"* are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a *"Master"* or *"Blanket"* policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term *"Extended Coverage,"* and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the Master or Blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    11802041660
VMP®                                                                                         Form 3140 1/01
Wolters Kluwer Financial Services    2018372314.1.4.4217-J20171018Y                          13/10
Initials:                                                               Page 1 of 2

Deed Book 59112 Pg 449

elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

**Borrower**



Michael S Flock                                    Date
                                                   Seal

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®                                                                                  Form 3140 1/01
Wolters Kluwer Financial Services            2014072316.1.4.4217-J20171018Y                  12/10
                                                                              Initials ___ Page 2 of 2
                                                                                1183241868

Deed Book 59112 Pg 450

| Lender | Grantor | Date |
|---|---|---|
| JPMorgan Chase Bank, N.A. | Michael S Fleck | July 25, 2018 |
| 1111 Polaris Parkway | 819 Durant Pl NE | |
| Columbus, OH 43240-2050 | 8 | Loan Number |
| | ATLANTA, GA 30308-1600 | 1189241588 |

**Property Address:** 819 DURANT PL NE APT, 8, ATLANTA, GA 30308

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

By signing below, I acknowledge this waiver.

Grantor



_____    7/25/18
Michael S Fleck                         Date
                                        Seal

Signed, sealed and delivered in the presence of:

_____    07-25-18
                                        Date
*Unofficial Witness*

This certificate is attached to a __3__ page document dated July 25, 2018 entitled Waiver of Borrowers Rights

## ACKNOWLEDGMENT CERTIFICATE

State of __Connecticut__

County of __New Haven__

Before me, __Judith Testone Beliveau__
<br>Name of Notary Public

day personally appeared __Michael S. Fleck__
<br>Name of signer(s)

to be the person(s) whose name(s) is/are subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __25th__ day of __July__, __2018__
<br>Year

**Judith Testone Beliveau**
<br>Notary Public's Signature

My Commission Exp. 01/31/2023

```
Judith Testone Beliveau
Notary Public-Connecticut
My Commission Expires
January 31, 2023
```

**Signer's Identity verified by:**

☐ Personally known to me

☐ Identity proven on the oath _____
<br>Name of credible witness

☒ Identity proven on the basis of __DL & US Passport__
<br>Description of identity card or other document

__, on this__

Copyright ©2011 American Association of Notaries, Inc.    P.O. Box 630601  Houston, TX 77263    1-800-721-2663    www.usnotaries.com

*Notary Public*
*State of Georgia*
*My commission expires:*

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Closing Attorney

_____     07-25-18
*Closing Attorney*                              Date



**Kathryn M. Cigelske P.C.**
**d/b/a Real Title Solutions**
**By: Kathryn M. Cigelske**
**Closing Attorney**

Waiver Of Borrowers Rights And Foreclosure Disclosure-GA
VMPR
Wolters Kluwer Financial Services © 2009                                        07/14
Page 2 of 2

Deed Book 54112 Pg 454

Notary Public
*State of Georgia*
*My commission expires:*

## FORECLOSURE CLOSING DISCLOSURE

**O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.**

By signing below, I acknowledge this disclosure.

**Borrower**

_Michael S. Fleck._ 7/25/18
Michael S Fleck                    Date
                                   Seal

Signed, sealed and delivered in the presence of:

                         07-15-18
Unofficial Witness        Date

Waiver Of Borrowers Rights And Foreclosure Disclosure-GA
VMP6
Wolters Kluwer Financial Services © 2009

1106241580
07P4
Page 3 of 3

*This certificate is attached to a ___3___ page document dated July 25th 18 entitled Foreclosure Closing Disclosure*

## ACKNOWLEDGMENT CERTIFICATE

State of Connecticut

County of New Haven

Before me, _____ Judith Testone Beliveau _____ , on this
<span>Name of Notary Public</span>

day personally appeared _____ Michael S. Fleck _____
<span>Name of signer(s)</span>

to be the person(s) whose name(s) is/are subscribed to the foregoing instrument and acknowledged to me that
he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___25th___ day of ___July___ , ___2018___
<span>Day</span>                                    <span>Month</span>    <span>Year</span>

**Signer's Identity verified by:**

☐ *Personally known to me*

☐ *Identity proven on the oath*

☒ *Identity proven on the basis of* ___NLA Passport___
<span>Name of credible witness</span>
<span>Type of identification &amp; issuing authority</span>

_Judith Testone Beliveau_
<span>Notary Public's Signature</span>

My Commission Exp. 01/31/2023

[Notary seal:]
Judith Testone Beliveau
Notary Public-Connecticut
My Commission Expires
January 31, 2023
(Seal)

Copyright ©2011 American Association of Notaries, Inc    PO Box 630601  Houston, TX 77263   1-800-721-2663   www.usnotaries.com

Deed Book 57112 Pg 455

Deed Book 59112 Pg 456
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

# Exhibit A

All that tract or parcel of land lying and being in Land Lot 48 of the 14TH District of FULTON County,
Georgia, being Condominium Unit 8, Building 819, of PALISADES BY THE PARK, a Condominium,
(fka Lots 29 and 30, Block 3 of Glendale Terrace, Plat Book 12, page 21) rs shown on the plat recorded in
Condominium Plat Book 11, Page 117, aforesaid records as may be amended, and the floor plans
recorded in Condominium Floor Plan Cabinet 2, Slide 399, aforesaid records as may be amended.
(Property Address: 819 Durant Place, Unit #8, Atlanta, Georgia 30308)

Map Reference:   14 –0048-0002-107-6

**EXHIBIT "B" FOLLOWS**

17511370v1

Deed Book 61316 Page 422
Filed and Recorded 03/16/2020 12:53:00 PM
2020-0152144
Georgia Intangible Tax Paid $247.50
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 9411392240
0848497841

Prepared By:
Scott Malone
Figure Lending LLC
237 Kearny St., #170
San Francisco, CA 94108

After Recording Return To:
Figure Lending LLC
Attn: Scott Malone
237 Kearny St., #170
San Francisco, CA 94108

APN:14-0048-0002-107-6

### GEORGIA
### DEED TO SECURE DEBT
### (Securing Future Advances)

**THIS OPEN-END DEED TO SECURE DEBT** ("Security Deed") is made on 03/10/2020. The name and address of the Grantor(s) is/are Michael Fleck, 819 DURANT PL NE ATLANTA, GA 30308**.** This Security Deed is given to Figure Lending LLC, whose address is 650 California Street, Suite 2700, San Francisco, CA 94108. In this Security Deed, the terms "you," "your" and "yours" refer to the Grantor(s). The terms "we," "us" and "our" refer to Figure Lending LLC.

Pursuant to a Home Equity Line of Credit Agreement ("Agreement") dated 03/09/2020, Michael Fleck ("Borrower") may incur indebtedness in amounts fluctuating from time to time up to a maximum credit limit of eighty-two thousand four hundred thirty-seven and 00/100 (U.S. $82,437.00). The Agreement is a revolving, open-end line of credit. The Agreement provides for monthly payments of principal and interest. All amounts due under the Agreement must be paid in full not later than 04/06/2030. Additional draws may be taken under the Agreement and each draw may have a different interest rate, as set forth more fully in the Agreement, and, as a result, the dollar amount of the monthly payments of principal and interest required under the Agreement may increase.

Pursuant to the terms of the Agreement, Borrower may request draws from time to time, subject to the credit limit and other limitations contained in the Agreement. Each draw will be recorded in our books and records and will be due and payable no later than the end of its repayment period as set forth in the Agreement. All draws, with interest thereon, and all and other amounts Borrower owes us under the Agreement will be secured by this Security Deed. You agree that all draws taken by Borrower will be considered draws taken to or for the benefit of each or any of you, even if you did not sign the Agreement and even if you did not request the draw.

You agree that this Security Deed will continue to secure all draws now or later taken under the terms of the Agreement, including draws taken whether or not at the time a draw is taken there is any principal balance outstanding under the Agreement. The parties agree that this Security Deed will secure unpaid draws, interest, future draws, and all other amounts due under this Security Deed and the Agreement.

This instrument is a deed passing legal title pursuant to the laws of the State of Georgia governing deeds to secure debt and is not a mortgage. This Security Deed secures to us:

(a) the repayment of all amounts owed to us under the Agreement, including future draws, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other amounts, with interest, advanced under this Security Deed to protect the security of this Security Deed; and (c) the performance of your covenants and agreements under this Security Deed and the Agreement. For this purpose and in consideration of the debt and in order to secure Borrower's obligation to us evidenced by the Agreement, Grantor hereby grants, bargains, conveys, transfers, assigns and sells unto us and our successors and assigns, with power of sale, the following described property located in FULTON County, Georgia: described on exhibit A attached hereto

which has the address of 819 DURANT PL NE # 8 ATLANTA, Georgia 30308 ("Property Address");

**TO HAVE AND TO HOLD** this property unto us and our successors and assigns, forever, together with all the improvements now or later erected on the property, and all easements, rights, appurtenances, and fixtures now or later a part of the property. All replacements and additions will also be covered by this Security Deed. All of the foregoing is referred to in this Security Deed as the "Property."

**YOU COVENANT** that you are lawfully seized and possessed of the Property hereby conveyed and have the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**YOU AND WE** covenant and agree as follows:

**1.    Payment of Principal, Interest and Other Charges.** Borrower will pay when due the principal, interest and all other amounts owing under the Agreement and all other amounts due under this Security Deed.

**2.    Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 will be applied by us as provided in the Agreement.

**3.    Prior Security Instruments; Charges; Liens.** You will perform all of your obligations under any mortgage, deed of trust, deed to secure debt or other security instruments with a lien which has priority over this Security Deed, including your covenants to make payments when due. You will pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Deed or any advance under this Security Deed, and leasehold payments or ground rents, if any. Upon our request, you will promptly furnish to us all notices of amounts to be paid under this Section and receipts evidencing any such payments you make directly. You will promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Security Deed or any advance under this Security Deed.

We specifically reserve to our self and our successors and assigns the unilateral right to require, upon notice, that Borrower pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Security Deed and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for

2

hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law.

     **4.**    **Hazard Insurance.**  You will keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding and earthquakes, for which we require insurance. This insurance will be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals will be acceptable to us and will include a standard mortgagee clause. If we require, you will promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this Section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property. You also understand and agree that the premium for any insurance may be higher than the premium you would pay for the insurance. You will promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

We may also, at our option and on your behalf, adjust and compromise any claims under any insurance, give releases or acquittances to the insurance company in connection with the settlement of any claim and collect and receive insurance proceeds. You appoint us as your attorney-in-fact to do all of the foregoing, which appointment you understand and agree is irrevocable, coupled with an interest with full power of substitution and will not be affected by your subsequent disability or incompetence.

Insurance proceeds will be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds will be applied to amounts secured by this Security Deed, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, we may then collect and use the proceeds to repair or restore the Property or to pay amounts secured by this Security Deed, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal will not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition will pass to us to the extent of the amounts secured by this Security Deed immediately prior to the acquisition.

You will not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

     **5.**    **Preservation, Maintenance and Protection of the Property; Loan Application; Leaseholds.** You will not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You will be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair our interest in the Property and/or rights under this Security Deed. You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of our interest in the Property and/or rights under this Security Deed. You will also be in default if you, during the home equity line of credit application process, gave materially false or inaccurate information or

3

statements to us (or failed to provide us with any material information) in connection with the home equity line of credit evidenced by the Agreement, including representations concerning your occupancy of the Property as a principal residence. If this Security Deed is on a leasehold, you will comply with the lease. If you acquire fee title to the Property, the leasehold and fee title will not merge unless we agree to the merger in writing.

**6.    Protection of Our Rights in the Property; Mortgage Insurance.**  If you fail to perform the covenants and agreements contained in this Security Deed, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any amounts secured by a lien which has priority over this Security Deed or any draw or amounts owed under the Agreement or this Security Deed, appearing in court, paying reasonable attorney's fees, paying any amounts which you are required to pay under this Security Deed and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this Section. Any amounts we pay under this Section will become additional amounts you owe us and will be secured by this Security Deed. These amounts will bear interest from the disbursement date at the rate established under the Agreement and will be payable, with interest, upon our request. If we required mortgage insurance as a condition of making the home equity line of credit secured by this Security Deed, Borrower will pay the premiums for such insurance until such time as the requirement for the insurance terminates.

**7.    Inspection.**  We may enter and inspect the Property at any reasonable time and upon reasonable notice.

**8.    Condemnation.**    The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are assigned and will be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the amounts secured by this Security Deed, whether or not then due. Unless we and Borrower otherwise agree in writing, any application of proceeds to principal will not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

**9.    You Are Not Released; Forbearance by Us Not a Waiver.**  Extension of time for payment or modification of amortization of the amounts secured by this Security Deed granted by us to any of your successors in interest will not operate to release your liability or the liability of your successors in interest. We will not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the amounts secured by this Security Deed by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy will not waive or preclude the exercise of any right or remedy.

**10.    Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Deed will bind and benefit your successors and permitted assigns. Your covenants and agreements will be joint and several. Anyone who co-signs this Security Deed but does not execute the Agreement: (a) is co-signing this Security Deed only to mortgage, grant and convey such person's interest in the Property; (b) is not

4

personally obligated to pay the Agreement, but is obligated to pay all other amounts secured by this Security Deed; and (c) agrees that we and anyone else who signs this Security Deed may agree to extend, modify, forbear or make any accommodations regarding the terms of this Security Deed or the Agreement without such person's consent.

**11.    Loan Charges.**  If the loan secured by this Security Deed is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any amounts already collected from you which exceed permitted limits will be refunded to you.  We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

**12.    Notices.**  Unless otherwise required by law, we may deliver any notice to you provided for in this Security Deed by mail, at the most recent address we have on file for you, or if you have consented to electronic communications, by e-mail or any other electronic method to which you have consented.  Unless otherwise required by law, any notice to us will be given by first class mail to our address provided above or any other address we designate by notice to you.

**13.    Governing Law; Severability.**  This Security Deed is governed by the law of the jurisdiction in which the Property is located.  In the event that any provision of this Security Deed conflicts with applicable law, such conflict will not affect other provisions of this Security Deed which can be given effect without the conflicting provision.  The provisions of this Security Deed are severable.

**14.    Transfer of the Property.**  If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all amounts secured by this Security Deed.  However, this option will not be exercised by us if exercise is prohibited by applicable law.

**15.    Sale of Agreement; Change of Loan Servicer.**  The Agreement or a partial or participation interest in the Agreement (together with this Security Deed) may be sold one or more times without prior notice to you.  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Security Deed.  There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement.  If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law.  The notice will state the name and address of the new Loan Servicer and any change in address to which payments should be made.  The notice will also contain any information required by applicable law.

**16.    Hazardous Substances.**  You will not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances (defined below) on or in the Property.  You will not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law (defined below).  The preceding two sentences will not apply to the presence, use, or storage on the Property of Hazardous Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.  You will promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property

5

and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, you will promptly take all necessary remedial actions in accordance with Environmental Law. As used in this Security Deed, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Security Deed, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**17.      Acceleration; Remedies.  You will be in default if (a) any payment required by the Agreement or this Security Deed is not made when it is due; (b) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (c) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property.  If a default occurs, we will give you notice specifying: (i) the default; (ii) the action required to cure the default; (iii) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (iv) that failure to cure the default on or before the date specified in the notice may result in acceleration of the amounts secured by this Security Deed and foreclosure or sale of the Property.  The notice will further inform you of any right to reinstate after acceleration and any right to bring a court action to assert the nonexistence of a default or any other defense you may have to acceleration and foreclosure or sale.  If the default is not cured on or before the date specified in the notice, we, at our option, may require immediate payment in full of all amounts secured by this Security Deed without further demand and may invoke the power of sale granted by you and any other remedies permitted by applicable law.  We will be entitled to collect all charges, costs, fees and expenses incurred in pursuing the remedies provided in this Section 17, including reasonable attorneys' fees of fifteen percent (15%) of the amount due and owing as permitted by applicable law and costs of title evidence.   You   appoint us the agent and attorney-in-fact for you to exercise the power of sale. If we invoke the power of sale, we shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by applicable law. We, without further demand on you, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order we determine. We or our designee may purchase the Property at any sale.**

**We shall convey to the purchaser indefeasible title to the Property, and you hereby appoint us as your agent and attorney-in-fact to make such conveyance. The recitals in our deed shall be prima facie evidence of the truth of the statements made therein. You covenant and agree that we shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Deed; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by applicable law.**

**If the Property is sold pursuant to this Section 17, you, or any person holding possession of the Property through you, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, you or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.**

**18.**    **Discontinuance of Enforcement.**    Notwithstanding our acceleration of the amounts secured by this  Security Deed under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Security Deed.

**19.**    **Release.**    Upon your request that we terminate the Agreement secured by this Security Deed and the payment and discharge by you of all amounts secured by this Security Deed, we shall cancel this Security Deed without charge to you.  You will pay any recordation costs, as permitted by law.

**20.**    **Additional Charges.**    Borrower agrees to pay any charges, costs, fees and expenses permitted by law in connection with the servicing of the Agreement, including the costs of obtaining tax searches and subordinations.

**21.**    **Waiver.**    You waive all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquish all rights of curtesy and dower in the Property.  No waiver by us at any time of any provision, agreement or covenant contained in this Security Deed or the Agreement will be deemed to be or construed as a waiver of any other provision, agreement or covenant or of the same provision, agreement or covenant at any other time.

**22.**    **Riders to this Security Deed**.  If one or more riders are executed by you and recorded together with this Security Deed, the covenants and agreements of each such rider will be incorporated into and will amend and supplement the covenants and agreements of this Security Deed as if the rider(s) were a part of this Security Deed.

Check applicable boxes:

☐ Condominium Rider                    ☐ 2-4 Family Rider

☐ Planned Unit Development          ☐ Other(s) (specify)
   Rider

**BY SIGNING BELOW,** you accept and agree to the terms, agreements and covenants contained in this Security Deed and in any rider(s) executed by you and recorded with it.

_Michael Fleck_ _____ (L.S.)    _____ 03/10/2020 _____
Michael Fleck

_Taylor Davis_ _____    _____ 03/10/2020 _____
Taylor Davis
(Unofficial Witness)

7

Deed Book 61316 Page 429

_____        ___03/10/2020___
Michael Cook
(Notary Public)

6444F12D34EAAE5D87CCF2F5A469FFFA
9B76C5971913EFBC6872938FDCFB1BAA
47C750903D12475BAB6AB741F01B6CF7
2AD4C23E801B131063F79110AA2ECF8F

8

Deed Book 61316 Page 430

State of Nevada

County of Washoe

On this 10th day of March 2020, before me, Michael Cook (the undersigned notary public), Michael Fleck personally appeared by means of an interactive two-way audio and video communication, proved to me through satisfactory evidence which were a government-issued identification credential, credential analysis and identity proofing, to be the person whose name is signed on the preceding or attached instrument, and who acknowledged to me that this person was the maker of the attached instrument and executed this instrument voluntarily as the free act of the person named in the instrument for its stated purpose.

This notarial act was performed using audio-video communication.

......................................................
Signature of Notary Public

**Michael Cook**
NOTARY PUBLIC
STATE OF NEVADA
I.D. # 19-2531-2
My Comm. Exp. May 28, 2023

Deed Book 61316 Page 431

Exhibit A - Property Legal Description

All that tract or parcel of land lying and being in Land Lot 48 of the 14TH District of FULTON County,
Georgia, being Condominium Unit 8, Building 819, of PALISADES BY THE PARK, a Condominium,
(fka Lots 29 and 30, Block 3 of Glendale Terrace, Plat Book 12, page 21) rs shown on the plat recorded in
Condominium Plat Book 11, Page 117, aforesaid records as may be amended, and the floor plans
recorded in Condominium Floor Plan Cabinet 2, Slide 399, aforesaid records as may be amended.
(Property Address: 819 Durant Place, Unit #8, Atlanta, Georgia 30308)  Map Reference #14-48-2-107-6.

Deed Book 61316 Page 432

GRANTOR: Michael Fleck

LOAN NUMBER: 1-20070-038

LENDER: Figure Lending LLC

DATE OF SECURITY DEED: 03/10/2020

# WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered
in the presence of:


*Michael Fleck*
_____ (L.S.)        _____
Michael Fleck                                               03/10/2020


*Taylor Davis*
_____              _____
Taylor Davis                                                 03/10/2020
(Unofficial Witness)

Deed Book 61316 Page 433

_____    _____ 03/10/2020 _____
Michael Cook
(Notary Public)

6444F12D34EAAE5D87CCF2F5A469FFFA
9B76C5971913EFBC6872938FDCFB1BAA
47C750903D12475BAB6AB741F01B6CF7
2AD4C23E801B131063F79110AA2ECF8F

Deed Book 61316 Page 434
Cathelene Robinson
Clerk of Superior Court

State of Nevada

County of Washoe

On this 10th day of March 2020, before me, Michael Cook (the undersigned notary public), Michael Fleck personally appeared by means of an interactive two-way audio and video communication, proved to me through satisfactory evidence which were a government-issued identification credential, credential analysis and identity proofing, to be the person whose name is signed on the preceding or attached instrument, and who acknowledged to me that this person was the maker of the attached instrument and executed this instrument voluntarily as the free act of the person named in the instrument for its stated purpose.

This notarial act was performed using audio-video communication.

.....................................................
Signature of Notary Public

**Michael Cook**
NOTARY PUBLIC
STATE OF NEVADA
I.D. # 19-2531-2
My Comm. Exp. May 28, 2023